D. Michael Reilly, *admitted pro hac vice*
reillym@lanepowell.com
**LANE POWELL PC**
PO Box 91302
Seattle, Washington 98111-9402
Telephone: 206.223.7000
Facsimile: 206.223.7107

Hans N. Huggler, OSB No. 144993
hugglerh@lanepowell.com
**LANE POWELL LLC**
1600 A Street, Suite 304
Anchorage, Alaska 99501-5148
Telephone: 907.277.9511
Facsimile: 907.276.2631

Attorneys for Defendant Life Insurance
Company of North America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATHAN DYKMAN,<br><br>                    Plaintiff,<br><br>    v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>                    Defendant. | Case No. 3:20-cv-01547-IM<br><br>**DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD** |

## I. INTRODUCTION

This is a long-term disability benefits case governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff Nathan Dykman, a software engineer who worked for Providence, asserts he was wrongfully denied long-term disability benefits by defendant Life Insurance Company of North America ("LINA") and that he is disabled by a combination of visual limitations and fatigue arising from long-present Multiple Sclerosis. But LINA's determination

PAGE 1 –   DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

was correct—Dykman failed to establish that he was functionally limited and unable to work throughout the six-month "elimination period" of September 8, 2018, through March 7, 2019, during which he was required to meet all eligibility criteria before benefits would be paid. As a result, Dykman was not eligible for benefits, LINA correctly determined the same, and the Court should deny his motion and enter judgment for LINA.

## II. RELEVANT PLAN PROVISIONS

Dykman was a participant in the Group Long Term Disability plan offered by Providence St. Joseph in benefits Class 12 (the "Plan"), insured and administered by LINA under a group policy that set out the Plan's substantive terms for receiving long-term disability benefits ("the Policy"). (AR 45-165.) At issue is whether Dykman has proven by a preponderance of the evidence that he was disabled under the Policy's "Regular Occupation" standard as of September 8, 2018, and continuing through March 7, 2019. That standard requires that a claimant be "unable to perform the material duties of his or her Regular Occupation; and unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation." (AR 84.)

The Policy defined "Regular Occupation" as:

> **Regular Occupation**
>
> The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.

(AR 156.) Before Dykman was eligible to receive benefits, however, he was required to show that he met the disability standard throughout a 180-day "elimination period." (AR 84, 142.) Dykman has not done so and the Court should deny his motion and enter judgment for LINA.

PAGE 2 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

### III. CLAIM HISTORY

A. **Dykman Applies for Disability Benefits.**

Nathan Dykman is a software engineer who was employed by Providence. He stopped working on September 8, 2018, and in January 2019, applied for long-term disability benefits. (AR 5101.) In a letter dated January 3, 2019, Dykman's treating neurologist Dr. Kyle Smoot described his condition to LINA, reporting:

> Mr. Dykman is under my care for the treatment of Multiple Sclerosis. I last evaluated him on 12/26/2018. He has been having vision difficulties - dry eyes resulting in difficulty focusing. He has not been able to work since September, secondary to difficulty reading the computer screen - develops blurriness which can cause diplopia. No changes in medication although Verapamil was increased (vision did worsen). Has returned to the original dose with no improvement in his vision. Feels like he has one good hour in the morning. Then if he continues to look at a computer, he will develop headaches.
>
> * * * *
>
> He cannot and should not do any work that requires the use of his vision at this time, as this worsens his symptoms and can cause safety issues for himself and others. There is no return to work plan at this time, other than a referral for further evaluation and consultation.

(AR 5033.) Dr. Smoot's colleague, Dr. Romba, reiterated visual impairment from dry eyes as the disabling condition on a LINA Physical Ability Assessment form and did not otherwise report any limitations for Dykman. (AR 5031-32.) In response to a follow-up inquiry from LINA, Dr. Smoot's office confirmed that "a rare eye problem which causes significant dry eyes, blurred vision, eye fatigue and intermittent blindness * * * is the primary reason he is unable to continue working" and that he "experiences ongoing significant physical and cognitive fatigue, despite a normal physical exam, which is a very common symptom of Multiple Sclerosis." (AR 4864.)

In support of his application Dykman submitted treatment records from his ophthalmologist, Dr. Sonal Dave, which documented a diagnosis of dry eye syndrome and a history of treatment with punctal plugs (devices that block tear duct drainage to increase moisture to the eyes) spanning 2017 and 2018. (AR 5037-78.) The last plug was put in on September 11,

PAGE 3 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

LANE POWELL LLC
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

2018, after which Dr. Dave documented that Dykman reported both eyes feeling "goopy and dry" and that he had stopped work. (AR 5045.) Under Dr. Dave's treatment Dykman's condition was "improving" by early January. (AR 5073.)

Dykman also submitted records from Dr. Melanie Doak, an internist, documenting similar reports. At a December 27, 2018, visit, Dr. Doak recorded that Dykman was on disability because he could not sit in front of a computer and that his physicians were considering whether a recent medication change was the source of his symptoms. (AR 3302-3315.)

Dykman also submitted psychiatric records. (AR 1298-1310.) His psychiatrist, Dr. Zarling, reported that "in general Mr. Dykman is able to perform the cognitive and instrumental tasks of his job, but his experience of physical fatigue and lack of stamina, combined with eye discomfort impairs his ability to sustain effort on computer screens. He requires help coping with work/financial implications of his limitations." (AR 1303.) Dr. Zarling opined that "Mr. Dykman is not disabled on the basis of mental health issues, but has a depression currently complicating coping with combined health-related concerns and work-related problems." (AR 1302.)

**B.     Two Independent Doctors Who Analyzed Dykman's Submissions Opined That They Did Not Support Functional Limitations Precluding Him From Working.**

1. <u>Independent Neurologist Dr. Lawrence Teitel Opines that Dykman's Submissions Did Not Establish Work Restrictions</u>.

To evaluate Dykman's claim, LINA carefully considered the medical evidence to identify appropriate specialists who could opine on Dykman's condition. (AR 5556-61.) LINA obtained the independent opinion of a neurologist, Dr. Laurence Teitel. (AR 1311.) Dr. Teitel reviewed the medical records submitted and disagreed that Dykman was functionally limited. He stated:

> I have reviewed and conducted a separate analysis of the issue or issues upon which there is disagreement and I conclude Dr. Smoot's opinion, Dr. Dave's opinion and Dr. Doak's opinion are not well supported by medically acceptable clinical or laboratory diagnostic techniques and are inconsistent with the other substantial evidence in the claim file because: 1 - Dr. Smoot documents Mr. Dykman has intact ocular motility, visual fields as well as normal extremity strength, cerebellar coordination, gait and cognition; 2 - Dr. Dave, while documenting Mr. Dykman has varying degrees of

PAGE 4 –   DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

LANE POWELL LLC
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

> conjunctival injection and corneal exam, on multiple occasions he documents Mr. Dykman has intact central visual acuity at near and distance and specifically notes the dry eyes condition does not affect distance or near vision.

(AR 1312.) Dr. Teitel concluded that Dykman was not functionally limited. (*Id.*)

### 2. Independent Ophthalmologist Dr. Houman Vosoghi Opines that Dykman's Submission Did Not Establish Work Restrictions.

LINA also obtained the opinion of ophthalmologist Dr. Houman Vosoghi. (AR 4353.) Dr. Vosoghi found that the record supported a diagnosis of optic neuritis related to MS and bilateral dry eye syndrome, but that neither condition supported work limitations. (AR 4354.) Dr. Vosoghi noted that Dykman's medical records showed:

> no current visual findings such as optic nerve involvement, and has no established visual field loss, visual acuity loss to the extent to impact functioning. The claimant has normal intra-ocular pressures, no fundoscopy abnormality and only dry eye symptoms which can be managed with the current treatment plan. I acknowledge, MS can result in flare-ups involving vision with symptoms of diplopia, blurred vision, loss of vision, however, the claimant does not present with current flare-up and associated visual deficits.

(AR 4354.) Dr. Vosoghi concluded that on the conditions in evidence no work restrictions were necessary. (*Id.*) In light of two specialist physician opinions finding no work restrictions, LINA denied Dykman's claim on April 5, 2019. (AR 4356.)

### C.   Dykman Appeals LINA's Claims Decision.

On October 1, 2019, Dykman appealed LINA's decision. (AR 176-614.) Along with a variety of medical literature, Dykman's submission included records from his primary care physicians spanning from February 2011 to July 2019. They showed Dykman received care for sinus symptoms, skin ailments, and consulted his doctor regarding psychiatric medications. (AR 219-231.) The records also documented sinus issues, sleep apnea, and neurological issues related to his MS. (AR 326-419.) Dykman submitted a statement asserting his inability to work due to "Multiple Sclerosis related fatigue and cognitive problems" and that he could not use a computer for more than an hour without developing blurry vision. (AR 422.) His mother submitted a letter documenting her observations of his condition. (AR 420.) On October 2, 2019,

PAGE 5 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

LANE POWELL LLC
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

Dykman submitted a letter from neurologist Dr. Smoot recounting Dykman's history of treatment and symptoms of multiple sclerosis. (AR 4609.) And on November 1, 2019, Dykman submitted a supporting letter from Dr. Dave. (AR 3972.)

On November 6, 2019, Dykman submitted additional records from Dr. Smoot. (AR 3973.) They showed that on March 26, 2019, Dykman saw Dr. Smoot "to discuss long-term disability" due to blurry vision and persistent fatigue. (AR 3976.) Dr. Smoot reported Dykman had relapsing-remitting MS but that "[o]verall, he is doing well on Tecfidera with no suggestion of a relapse. However, he continues to have intermittent visual issues which impair his ability to use a computer." (AR 3980.) Dr. Smoot also noted Dykman suffered from depression, anxiety, and "intractable fatigue" and was unable to complete a sleep study. (*Id*.) In August 2019, Dr. Smoot reported Dykman was diagnosed with "dry eyes" at OHSU's Casey Eye Institute (these records were not submitted by Dykman). (AR 3984.) Dykman reported continued fatigue, allergies, and stress related to his disability claim. Dykman reported that the scleral lens (a type of contact lens that creates a tear-filled space between lens and cornea) was helping him and that he was "able to use the computer some." (*Id*.)

Finally on November 7, 2019, Dykman submitted results of a brain MRI taken in June that showed "[r]edemonstration of multiple white matter lesions compatible with demyelinating disease" without "new or enhancing lesion[s] compared to prior scan on 5/13/17" and "[s]table focal lesion in the canalicular segment of the left optic nerve suggesting sequela of demyelinating plaque." (AR 3994.)

**D.  On Appeal, an Independent Board-Certified Neurologist Who Analyzed Dykman's Submissions Opined They Did Not Support Functional Limitations Precluding Him From Working.**

To assess Dykman's appeal, LINA obtained the opinion of independent board-certified neurologist Dr. Suja Johnkutty. (AR 4004-09.) Dr. Johnkutty first considered Dykman's reported vision problems, stating:

> Claimant has multifactorial causes for blurriness of his vision. In regards to the MS he does have evidence of a stable focal lesion in the canalicular segment of the left optic nerve suggesting sequela of

PAGE 6 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

> demyelinating plaque in 6/2019. He also has dry eyes as diagnosed by Dr. Dave and according to the records have been improving. Dr. Smoot's exam does not show any afferent pupillary defect to show an abnormality of the optic nerve. In addition, Dr. Dave's notes do not mention optic neuropathy either. Dr. Dave the ophthalmologist noted his vision causes him to be unable to read the computer which he attributes to the dysfunction in the lacrimal gland. On 8/8/19 as per neurology notes he saw the ophthalmologist who diagnosed him with 'dry eyes' at Casey Eye. On 8/8/19 visit he stated visual symptoms were slightly helped with eye treatment and he stated he was able to use the computer and some of his vision has improved. So therefore, there are no restrictions or limitations for vision.

(AR 4007-08.)  Dr. Johnkutty specifically considered Dykman's June 2019 MRI, noting:

> On 6/23/2019 his MRI of the brain showed redemonstration of multiple white matter lesions compatible with demyelinating disease. There is no new or enhancing lesion compared to prior scan on 5/13/2017. Stable focal lesion in the canalicular segment of the left optic nerve suggesting sequela of demyelinating plaque. This indicates that multiple sclerosis has been stable since 2017.

(AR 4008.)  Dr. Johnkutty also considered Dykman's reported fatigue, stating that:

> His persistent fatigue is complicated by multifactorial factors: depression, anxiety, untreated sleep apnea and multiple sclerosis. One factor that is contributing is the obstructive sleep apnea and the anxiety untreated as the claimant is not able to use the CPAP machine. In addition, his anxiety is limiting his ability to undergo the proper testing as well. Dr. Schute in 1/2014 stated he does have daytime sleepiness but he does not nap. As part of his work-up with Dr. Ramseyer he was not able to complete a sleep study secondary to anxiety. He is on medications as well that may contribute to fatigue including Effexor, Wellbutrin, Buspar and Ativan 1mg three times as needed for the anxiety. He was noted in the last 2 weeks prior to 8/8/19 to have more fatigue, and stress of applying for long-term disability. In addition, his psychiatrist retired. His primary care doctor has agreed to manage his medications, and claimant is looking into counseling. He does report some cognitive issues however, no neuropsychological testing was noted on record.

(AR 4008.)  She concluded:

> Given there are no limiting complaints of the optic nerve, no objective complaints on neurological exam for an APD (afferent pupillary defect) there are no restrictions or limitations from a neurological point of view.
>
> Given the multiple causes of fatigue and that the MFIS -Modified Fatigue Impact Scale score he had no fatigue on 12/26/18 as per Dr. Smoot the records do not support restrictions or limitations from a neurological perspective. His MRI scans were stable without

PAGE 7 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

LANE POWELL LLC
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

worsening disease burden either. He was not documented to take
naps during the day between activities based on the documentation
as well.

(AR 4008.)

On December 10, 2019, LINA wrote to Dykman, notifying him that based on its review it would uphold its prior decision, providing the Johnkutty opinion, and requesting his response. (AR 4000.)

On January 16, 2019, Dykman submitted his response, with voluminous records largely duplicating his prior submissions. (AR 2300-3089.) Dr. Johnkutty reviewed Dykman's submissions and issued an addendum opinion on January 28, 2020. (AR 5546.) Dr. Johnkutty noted the limited new records Dykman submitted, but did not change her opinion that Dykman was functionally limited by his neurological conditions. (AR 5548.) LINA again notified Dykman of its decision and requested his response.

Dykman submitted a response on February 28, 2020, which included a supplemental chart note from Dr. Smoot for December 26, 2019. (AR 1313-1338.) Dr. Smoot noted "slight" improvement in vision, no suggestion of an MS relapse, and attributed Dykman's fatigue to a combination of MS, "untreated" sleep apnea, and depression. (AR 1343.) Dr. Smoot noted that Dykman's "[c]ontacts are providing some benefit, can use the computer more often, but it still limits him. Next appointment is scheduled for January. No diplopia." (AR 1344.)

On March 9, 2020, Dr. Johnkutty reviewed Dykman's additional submissions and issued an opinion addendum. (AR 4168.) She noted Dr. Smoot's records did not include Dykman's visual symptoms in his "active problem list," that Dykman's June MRI was stable, that Dykman's contacts were providing some benefit, and that Dykman's neurological exam of the eyes was nonfocal. (AR 4169-70.) She concluded that "based on all of the medical evidence provided, there is no support from a neurological perspective that the claimant is functionally limited from 9/8/18 and continuing. Given there are improvements in terms of his vision, no objective complaints on neurological exam for an APD (afferent pupillary defect) there are no restrictions

PAGE 8 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR
JUDGMENT ON THE RECORD

LANE POWELL LLC
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

or limitations from a neurological point of view." (AR 4170.) Considering that opinion, LINA again conveyed its determination and requested comment. (AR 4197.)

Dykman submitted a response on April 9, 2020, enclosing a letter from Dr. Smoot. (AR 4173-96.) Dr. Smoot stated that "[d]isabling symptoms that initially involved vision difficulties resulting in blurriness, occasional diplopia, difficulty focusing, and difficulty reading a computer screen now also include fatigue and cognitive dysfunction. In addition, Mr. Dykman continues to experience intermittent weakness, dizziness/vertigo, sensory disturbances of the lower extremities, extension tremors, and dry eyes, all of which contribute to his disability." (AR 4196.) Dr. Smoot asserted that "[a]t present, Mr. Dykman is primarily disabled by his MS symptoms of fatigue and cognitive dysfunction, both of which are constant, ongoing, and disabling." (AR 4196.)

Dr. Johnkutty reviewed Dr. Smoot's letter and issued an opinion addendum on April 30, 2020, maintaining her prior opinion, noting no new medical records accompanied the letter. (AR 5550.) LINA notified Dykman of its intention to deny the claim and requested a response. (AR 3812.) Dykman responded on May 21, 2020, (AR 3793) but submitted no new medical evidence. LINA issued its final appeal determination on May 22, 2020, and this suit followed. (AR 3806.)

## IV. **LEGAL STANDARD**

The issue in this ERISA benefits case is straightforward: Was LINA's determination that Dykman did not establish he was "disabled" under the Policy as of September 8, 2018, and continuing correct? *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (on de novo review, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits * * *.").

Dykman has the burden of proving his entitlement to benefits based on the record before LINA at the time of its final administrative determination. *See Muniz v. Amec Constr. Mgmt.*, 623 F.3d 1290, 1294 (9th Cir. 2010). ERISA claims reviewed de novo are tried on the record pursuant to Federal Rule of Civil Procedure 52. *See Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d

PAGE 9 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

LANE POWELL LLC
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

1311, 1314 (D. Or. 2012) ("a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute.") (citations omitted). The Court should conclude Dykman has not met his burden, he did not qualify for benefits as of September 8, 2018, and continuing, and LINA correctly denied benefits as required by the Policy.

## V. ARGUMENT

**A. Although Dykman Asserted Disabling Visual Impairment in the Elimination Period, the Record Does Not Prove His Inability to Perform His Regular Occupation in That Period.**

    1. <u>Dykman Has Not Established He Was Visually Functionally Limited During the Elimination Period</u>.

The narrow question before the Court is whether Dykman has proven by a preponderance of the evidence that he was "disabled" throughout the elimination period between September 8, 2018, and March 7, 2019, and therefore qualified for benefits under the terms of the Plan. He has not. The record shows that when Dykman stopped work in September 2019, he reported fatigue but his asserted disabling condition was his impaired vision. ((AR 5033) (January 2019 letter to LINA in support of claim recounting visual symptoms as disabling); (AR 4196) (disabling symptoms "initially involved vision difficulties resulting in blurriness, occasional diplopia, difficulty focusing, and difficulty reading a computer screen"); (AR 1302) (psychiatrist statement that Dykman not disabled by depression but by visual difficulties and fatigue).) But Dr. Vosoghi noted that despite his symptom reports, Dykman had "intact central visual acuity at near and distance and [Dr. Dave] specifically note[d] the dry eyes condition does not affect distance or near vision." (AR 4354; referencing AR 5073.) Dr. Vosoghi opined that:

> the claimant is not functionally limited visually; the claimant despite presenting with a history of relapsing remitting multiple sclerosis, has no current visual findings such as optic nerve involvement, and has no established visual field loss, visual acuity loss to the extent to impact functioning. The claimant has normal intra-ocular pressures, no fundoscopy abnormality and only dry eye symptoms which can be managed with the current treatment plan. I acknowledge, MS can result in flare-ups involving vision with symptoms of diplopia, blurred vision, loss of vision, however, the

PAGE 10 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

> claimant does not present with current flare-up and associated visual deficits.

(AR 4354.) In other words, while Dykman asserted loss of visual acuity during the elimination period, that loss is not supported by documented test results. On the contrary, in September 2018 he reported to his physical therapist that he had experienced "no vision changes except for just normal glasses wear." (AR 1822.) And while Dykman saw a specialty practitioner at OHSU's Casey Eye Institute in the summer of 2019 who diagnosed him with "dry eyes" and was "to determine if there was a correlation between MS and Dykman's severe dry eye condition," he did not submit those records in support of his appeal. (AR 3984; ECF No. 20 at 18.) What, if anything, they reveal about Dykman's condition during the elimination period is unavailable to the Court, and their absence in the context of Dykman's burden of proof supports the reasonable inference that they did not support his arguments for disability.

On administrative appeal Dykman argued his disabling visual impairment was supported by the appearance of a new focal lesion, and that Dr. Johnkutty was ignoring this critical fact. (AR 1766.) But Dr. Johnkutty was not incorrect—Dykman's radiologist expressly stated he observed "[r]edemonstration of a focal area of signal abnormality in the canalicular segment of the left optic nerve, compatible with sequela of demyelinating disease" and made clear there were no new lesions in comparison with Dykman's 2017 MRI (AR 3994; AR 3995 (noting "stable" focal lesion, requiring prior imaging of same).) This is further confirmed by Dykman's neurologist, Dr. Smoot, who noted in his August 8, 2019, notes that the June MRI was "stable" and made no comment on a new lesion, as well as Dr. Smoot's July 2018 finding that Dykman showed no afferent pupillary defect, which could indicate optic nerve damage, and no indication of an MS relapse. (AR 1863.) The medical evidence does not support the conclusion that Dykman became visually impaired and stopped work because of changes in or development of an MS-related optic nerve lesion between 2017 and 2019.

Dr. Vosoghi's opinion was that while Dykman was reporting visual symptoms he contended were disabling, his dry-eye symptoms were manageable and his eye exams did not

PAGE 11 –DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

LANE POWELL LLC
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

reflect disabling visual impairment. The relevant inquiry is not whether Dykman suffered from dry eyes (which is not disputed) but rather whether his dry eyes limited his vision such that he could not perform his Regular Occupation. Dr. Vosoghi correctly concluded that Dykman's functional limitations during the elimination period are not established by the record, and he has not met his burden to show inability to perform his "Regular Occupation" during the elimination period due to visual impairments. On appeal, Dr. Johnkutty correctly agreed that the record did not support visual restrictions that rendered Dykman unable to perform his Regular Occupation during the elimination period. (AR 4008, 4170.) The Court should hold the same.

    2.    <u>Dykman Has Not Established He Was Impaired by Fatigue During the Elimination Period</u>.

Dykman asserts that his disability during the elimination period arose out of a combination of his visual impairments and MS-related fatigue. But as with his visual symptoms, there is limited support for the proposition that Dykman was functionally limited by fatigue to the point that he could no longer work. And there is strong support for the conclusion that his fatigue was the result of long-delayed treatment for sleep apnea present for years while Dykman worked full time.

Dykman's physicians now report his fatigue as impairing his function, but note that its disabling severity developed over time. ((AR 4196) (Dr. Smoot states in March 2020 that "[d]isabling symptoms that initially involved vision difficulties resulting in blurriness, occasional diplopia, difficulty focusing, and difficulty reading a computer screen now also include fatigue and cognitive dysfunction. In addition, Mr. Dykman continues to experience intermittent weakness, dizziness/vertigo, sensory disturbances of the lower extremities, extension tremors, and dry eyes, all of which contribute to his disability.")) Dr. Smoot's assertions are consistent with the evidence in the record, which does not support the conclusion that Dykman was limited from working by fatigue during the elimination period.

The medical records nearest to the elimination period paint a mixed picture of Dykman's fatigue. In May 2018, Dykman reported to Dr. Smoot that he had missed some work due to fatigue and increases in allergies, and to manage stress was walking around his office intermittently and

PAGE 12 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

playing the drums a few times a week. (AR 1705.) Dykman had scored just inside the "fatigued" category on a Modified Fatigue Impact Scale ("MFIS") and Dr. Smoot noted that "fatigue is still an issue" and that "MS may be contributing, but he has [sleep apnea] which is not being treated. Encouraged him to follow up with Dr. Ramseyer." (AR 1709.) This was not a new issue—Dykman saw Dr. Ramseyer in 2012 for sleep apnea. (AR 1646.) Dr. Smoot had been recommending Dykman treat his sleep problems for several years by May of 2018—he had already recommended Dykman work with Dr. Ramseyer in 2016 (AR 1695) and in 2017 noted Dykman had not followed up and again recommended treatment. (AR 3253.)

In September 2018, weeks after his asserted onset date, Dykman was seen by neurology nurse practitioner Gaedeke. (AR 2183.) She noted his energy was "much worse" and recorded that:

> Here due to FMLA paperwork. Also, out of work all of July. Went back to work and was required to go through a process of corrective actions. He is very stressed out as a result and all bis symptoms flared up again.
>
> He is struggling emotionally and has an appointment with [p]sychiatry and psychologist.
>
> He is wanting to lose weight but feels the stress of work place harassment is impacting his MS and ability to lose weight.

(AR 2183-84.) She also recorded that "[f]atigue continues to be an issue - MS may be contributing, but he has [sleep apnea] which is definitely contributing due to no treatment." (AR 2188.) Dykman also engaged in physical therapy "for ambulation and improved endurance" during this period, and his therapist noted he was "deconditioned" and the goal was to rebuild physical strength.

In December 2018 Dr. Smoot documented that Dykman "had not been able to work since September *secondary to difficulty reading the computer screen*" and that he was "depressed – frustrated with vision – not able to work" while noting he was following up with Dr. Ramseyer and using a sleep appliance at night. (AR 1713-14.) Dr. Smoot noted in March 2019 that Dykman had "no suggestion of a relapse" but had "intractable fatigue" and had been unable to complete a

PAGE 13 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

LANE POWELL LLC
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

sleep study due to anxiety.  (AR 3980.)  Neither the Court nor LINA has the benefit of Dr. Ramseyer's notes and evaluation of the causes and treatability of Dykman's fatigue—he did not submit those records to LINA and it is reasonable to infer their absence suggests they were not supportive of Dykman's claim.

Dr. Johnkutty, a neurology specialist best qualified to comment on Dykman's capacity and who had the benefit of the fullest record on appeal, considered Dykman's reported fatigue but recognized, as the record shows, that it was "multifactorial" and explicable by a combination of sleep apnea, Dykman's current medication regimen, and work-related stress.  (AR 4008.)  These conditions did not reflect physical limitations that prevented Dykman from working.  Accordingly, Dr. Johnkutty opined that the record "do[es] not support restrictions or limitations from a neurological perspective."  (*Id.*)  The Court should hold the same and enter judgment for LINA.

**B.     If the Court Rules in Dykman's Favor It Should Remand to LINA for Determination of Eligibility for Benefits Beyond March 7, 2021.**

If the Court holds Dykman was entitled to benefits under the Regular Occupation standard, that standard applies only through March 7, 2021, and the Court should remand to LINA for determination of eligibility beyond that date.

Two material legal changes occur after LINA has paid 24 months of benefits.  First, to continue receiving benefits Dykman must show he is "unable to perform the material duties of *any occupation* for which he or she is, or may reasonably become, qualified based on education, training or experience" and "unable to earn 60% or more of his or her Indexed Earnings," a more stringent standard.  (AR 84 (emphasis added).)  Second, benefits are available on a "limited basis during an Employee's lifetime for a Disability caused by, or contributed to by, [depression].  Once 24 monthly Disability Benefits have been paid, no further benefits will be payable on the basis of [depression]."  (AR 145.)  Accordingly, if the Court determines Dykman was eligible for continuing benefits, it should limit that holding to the 24-month Regular Occupation benefit period and remand to LINA for determination of eligibility beyond 24 months.  *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996).

PAGE 14 –DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1

## VI. **CONCLUSION**

The disposition of this case does not turn on Dykman's present condition. Rather, the Court must examine the record to determine whether Dykman was unable to perform his "Regular Occupation" and therefore was qualified for benefits when he stopped work on September 8, 2018, and throughout the elimination period. The record does not support that Dykman was functionally limited and unable to work throughout this period. The Court should therefore deny his motion and enter judgment for LINA.

DATED: March 4, 2021

        LANE POWELL LLC

        By:   s/ Hans N. Huggler
            D. Michael Reilly, *admitted pro hac vice*
            Hans N. Huggler, OSB No. 144993
            Telephone: 206.223.7000
            Telephone: 907.277.9511
Attorneys for Defendant Life Insurance Company of North America

PAGE 15 – DEFENDANT'S OPPOSITION AND CROSS MOTION FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8373529.1