D. Michael Reilly, *admitted pro hac vice*
reillym@lanepowell.com
**LANE POWELL PC**
PO Box 91302
Seattle, Washington 98111-9402
Telephone:  206.223.7000
Facsimile:  206.223.7107

Hans N. Huggler, OSB No. 144993
hugglerh@lanepowell.com
**LANE POWELL LLC**
1600 A Street, Suite 304
Anchorage, Alaska 99501-5148
Telephone:  907.277.9511
Facsimile:  907.276.2631

Attorneys for Defendant Life Insurance
Company of North America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATHAN DYKMAN,<br><br>                              Plaintiff,<br><br>     v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>                              Defendant. | Case No. 3:20-cv-01547-IM<br><br>**DEFENDANT'S REPLY IN SUPPORT OF CROSS MOTION FOR JUDGMENT ON THE RECORD** |

In support of its cross motion for judgment defendant Life Insurance Company of North

America ("LINA") replies as follows:

**1.      The Court Should Infer Dykman's Omitted Specialist Records Did Not Support His Claim for Disability.**

Dykman's claim centers on asserted visual impairment and fatigue, but the administrative

record does not contain materials from Dykman's mid-2019 visit to the specialist Casey Eye

PAGE 1 – DEFENDANT'S REPLY IN SUPPORT OF CROSS MOTION
         FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8404693.1

Institute at OHSU or his contemporary work with sleep specialist Dr. Ramseyer. (LINA Mot. at 11, 14.) Dykman asserts LINA could have accessed those records as part of his investigation and no inference is warranted from their omission. But it was not LINA's obligation to search out and pursue references to other provider's records—Dykman had the burden to submit adequate proof of loss (AR 149) and has the same burden here. *See Muniz v. Amec Constr. Mgmt.*, 623 F.3d 1290, 1294 (9th Cir. 2010). Dykman could have, but did not, submit these records during his extensive exchanges with LINA on appeal. The absence of testing and exam records from eye and sleep specialists here is conspicuous, particularly where Dykman himself told LINA that "Dr. Dave referred Mr. Dykman to Oregon Health & Science University for a neuro-ophthalmologist evaluation to see if there was a correlation between Mr. Dykman's MS and his severe dry eye condition," a relationship he emphasizes in litigation. (AR 190 (Dykman Appeal Letter).) In conducting its *de novo* review the Court should infer those records did not support Dykman's arguments for functional restrictions.

2.      **The Opinions of LINA's Independent Expert Reviewers Should Not Be "Disregarded" And Support the Conclusion That Dykman Was Not Disabled Throughout the Elimination Period.**

This dispute turns on Dykman's eligibility for "Regular Occupation" benefits during the six-month elimination period spanning September 8, 2018 to March 7, 2019. Three independent expert physicians[1] analyzed Dykman's submissions and medical records and concluded he was not physically restricted from working during the elimination period. The Court should accord those opinions' weight and hold LINA is entitled to judgment on the *de novo* record.

Dykman attacks the opinion of neurologist Dr. Teitel, who concluded Dykman had no restriction from working based on visual impairment from dry eyes or his multiple sclerosis.

---

[1] Dykman notes that the reports of Drs. Teitel and Vosoghi are labeled "Medical Director" reports. This internal designation does not indicate these doctors are "in-house" or employed by LINA, and all specialty opinions LINA obtained on this claim are from independent outside physicians. Rather, the Medical Director designation connotes specialist opinions provided to LINA on initial claims, distinguished from the "Peer Review" designation of physicians whose opinions are obtained on appeal of a benefits denial (and whose review includes the underlying medical director opinion).

PAGE 2 – DEFENDANT'S REPLY IN SUPPORT OF CROSS MOTION
            FOR JUDGMENT ON THE RECORD

(AR 1312.)  Dykman asserts "Dr. Teitel's conclusion that Dykman was not disabled from MS was contrary to the medical literature, which confirms Dykman suffered severe symptoms of MS, including fatigue, which is known to be a common disabling MS symptom and which disabled Dykman."  (Pl's Opp. at 15.)  But Dykman and his own physicians focused LINA (and Dr. Teitel) on Dykman's *visual* symptoms and ability to look at computers as disabling, as Dr. Teitel noted. (AR 1311 ("Although Mr. Dykman has a documented diagnosis and treatment for Multiple Sclerosis (MS) he reports difficulty for work activities due to dry eye condition interfering with viewing a computer screen."); *id.* (noting Dr. Smoot/NP Gaedeke's written response that Dykman's dry eye condition "is the primary reason Mr. Dykman is unable to work presently" while acknowledging Smoot also noted reported physical and cognitive fatigue "despite normal examination.").)  Dr. Teitel also set out his explicit reasoning for disagreeing with Dykman's treating providers on his reported impaired vision, noting "1- Dr. Smoot documents Mr. Dykman has intact ocular motility, visual fields as well as normal extremity strength, cerebellar coordination, gait and cognition; 2- Dr. Dave, while documenting Mr. Dykman has varying degrees of conjunctival injection and corneal exam, on multiple occasions he documents Mr. Dykman has intact central visual acuity at near and distance and specifically notes the dry eyes condition does not affect distance or near vision."  Dr. Teitel, a licensed neurologist, considered the contemporaneous medical record and gave his professional judgment that they did not establish Dykman suffered work-restricting impairments.  That opinion was reasonable and supported by the evidence then in the record and weighs in favor of judgment for LINA.

Dykman likewise attacks Dr. Vosoghi's opinion that Dykman's submissions did not support functional limitations, citing "gross errors" that require it to be "disregarded."  But again, those "gross errors" are proper disagreements on the weighing of evidence.  Opining experts need not punctiliously recite the contents of every medical record to expertly consider and highlight what they deem most significant to assessing a claimant's work restrictions.  Dr. Vosoghi opined that (1) he found the lack of current visual findings and lack of visual field loss significant to his assessment of Dykman's functional limitations, (2) Dykman's dry eyes could be managed under

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

the treatment plan reflected in the record, and (3) that there was no indication of an MS flareup that clearly tied the reported symptoms to that illness.  (AR 4354.)  He likewise found no functional restrictions.  Dr. Vosoghi's opinion was reasonable, supported by the record, and was not "contrary to the medical literature" simply because plaintiff submitted literature stating MS-related vision issues "can" arise without an otherwise-identifiable flareup.  (AR 1137-38.)  The Court should weigh Dr. Vosoghi's opinion in favor of judgment for LINA.

Finally, Dykman attacks the opinion of board-certified neurologist Dr. Suja Johnkutty. Dr. Johnkutty reviewed multiple rounds of submissions from Dykman as LINA dialoged with him about his claim, and that her reports emphasized different aspects of the record than Dykman favors does not show she "ignored" evidence in the record or rendered an opinion "contrary to the medical literature."  (AR 4008, 4168, 5550.)  *See* 29 C.F.R. § 2560.503-1(h)(4)(i).  As with the expert opinions on Dykman's initial claim, Dr. Johnkutty's opinion was reasonable, supported by the record, and weighs in favor of entry of judgment for LINA.

Dykman's attacks on these expert opinions share a common theme—that each physician "ignored" subjective and self-reported symptom severity in favor of "negative results."   In Dykman's telling, three experts reviewed his records and submissions with such incompetence that their opinions must be disregarded.  But benefit plans are not required to accept at face value the self-reported symptoms of applicants nor to seek independent medical examinations of claimants to establish eligibility for benefits.  *See Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1191-93 (noting "[plaintiff's physicians] recorded in large measure what plaintiff had reported to them.  LINA's experts are not bound to accept what plaintiff reports," that "ERISA * * * does not require that an insurer seek independent medical examinations," and that there is "wide acceptance in ERISA and disability cases of record reviews by psychiatrists and other doctors, without in person examinations, to uphold the propriety of claims decisions based on such reviews").  The burden was on Dykman to substantiate his benefits claim.  Even so, on appeal he did not submit capacity assessments or vision testing results that would translate his reported symptoms into functional limitations supporting work restrictions.  For example, Dykman knew

Dr. Vosoghi had assessed the record as lacking evidence of "established visual field loss [and] visual acuity loss to the extent to impact functioning." (AR 4358.) But while Dykman consulted with specialists at Casey Eye Institute between his denial and appeal, he submitted only a single new (aged) record from Dr. Dave and otherwise relied on the same ophthalmological evidence already submitted. Three separate medical experts did not grossly mis-interpret Dykman's submissions in opining his claim lacked support. Rather, they assessed the record Dykman submitted to support his claim and found it lacked support for work limitations. The Court should find the same and enter judgment for LINA.

**3.    If the Court Rules For Dykman It Should Limit Its Ruling To the 24 Months of Benefits Available Under the "Regular Occupation" Standard.**

This case focuses on Dykman's eligibility for benefits under the Policy's "Regular Occupation" standard and without regard to the Policy's 24-month Mental and Nervous Disorder exclusion. Even if the Court concludes that the evidence supports Dykman's disability during the elimination period of September 8, 2018 to March 7, 2019, it should limit its decision to that period and remand to LINA for determination of Dykman's eligibility beyond 24 months.

This case is the same as the binding Ninth Circuit authority Dykman ignores, *Saffle v. Sierra Pac. Power Co. Bargaining Unit LTD Plan*, 85 F. 3d 455 (9th Cir. 1996). There, a beneficiary sued for benefits under her plan's "regular occupation" standard and prevailed. *Id.* at 456. The plan also had a stricter "any occupation" standard. *Id.* On appeal the plan argued that "the district court erred by ordering benefit payments beyond the initial 24–month disability period because Saffle never applied for general disability payments and her eligibility for the second-tier benefits has never been considered by the Benefit Committee." *Id.* at 460. The Ninth Circuit agreed it was appropriate to remand for that purpose even though Saffle never had the "opportunity" to apply for the second-tier benefits because it was appropriate for the Saffle's plan to make the initial eligibility determination. The same is true here. LINA does not contest that if Dykman prevails here he should receive benefits for the 24-month Regular Occupation period (which ended on March 7, 2021). But the Court should remand to LINA for determination of

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

eligibility beyond 24 months because Dykman is a Plan participant whose right to continuing benefits turns on the *Plan's* determination of eligibility in the first instance. Remand would properly place responsibility for that determination on the Plan, with commensurate fiduciary obligations and administrative procedures to make a swift determination, consider appeals, and create a record for judicial review if needed. *Monroe v. Metro. Life Ins. Co.*, No. 215CV02079TLNCKD, 2020 WL 1430005, at *27 (E.D. Cal. Mar. 24, 2020) ("Because the administrator has not had the opportunity to consider whether Plaintiff is disabled under its definition for any gainful occupation, the Court agrees that remand is appropriate.").

This case is not like *Gorena*, which Dykman cites to resist remand. There, the Western District of Washington entered judgment that "clarified" Gorena's right to benefits by ordering that "[s]ubject to the terms and conditions of the Plan, Defendant is directed to pay her LTD claim to the policy's maximum benefit duration absent a showing of improvement in her medical condition." *Gorena v. Aetna Life Ins. Co.*, No. C17-532 MJP, 2018 WL 3008873, at *7 (W.D. Wash. June 15, 2018). Such a "clarification" should not be entered here. First, it would be inconsistent with the Plan's terms. The Plan places the burden on Dykman to affirmatively establish a right to continued benefits when requested by LINA, lacks any reference to "improvement" as a determining factor for eligibility, and provides for termination under numerous scenarios beyond medical condition (failure to receive appropriate care, failure to cooperate, etc.). (AR 148; *see also* AR 85, 142 (return to work program terms that include termination of benefits if beneficiary refuses modified work arrangement without "Good Cause").) Second, even if the Court could make such an order consistent with the Plan, it should not—in *Gorena*, the Court was "satisfied that Plaintiff has proven her inability to discharge the material duties of her sedentary position at Boeing and established beyond question the lifelong and steadily deteriorating nature of her medical condition." 2018 WL 3008873 at *7. By contrast, Dykman admits that his disabling symptoms have shifted over time, he is comparatively young, he is well educated, and he is presumably under on-going medical care, all of which means his current condition and ability to perform "any occupation" as of March 2021 is not before the Court and

PAGE 6 – DEFENDANT'S REPLY IN SUPPORT OF CROSS MOTION
FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8404693.1

should not be ruled on in this case.  There are no unusual circumstances here justifying deviation from the Ninth Circuit's preference for remand for benefits determinations.  A *Gorena* "clarification" order is not warranted and if the Court rules in favor of Dykman it should limit its ruling to the "Regular Occupation" benefits period of 24 months and remand for consideration of benefits eligibility beyond that period.

For the reasons set out in LINA's Opposition and Cross Motion brief and herein, the Court should deny Dykman's motion for judgment and enter judgment for LINA.

DATED:  April 8, 2021

LANE POWELL LLC


By:    s/  Hans N. Huggler
　　　　　D. Michael Reilly, *admitted pro hac vice*
　　　　　Hans N. Huggler, OSB No. 144993
　　　　　Telephone:  206.223.7000
　　　　　Telephone:  907.277.9511
　　　　Attorneys for Defendant Life Insurance Company of North America

PAGE 7 –  DEFENDANT'S REPLY IN SUPPORT OF CROSS MOTION
FOR JUDGMENT ON THE RECORD

**LANE POWELL LLC**
1600 A STREET, SUITE 304
ANCHORAGE, ALASKA 99501-5148
907.277.9511  FAX: 907.276.2631

120192.0225/8404693.1